UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Crim. No. 04-CR-10336-NMG |
| | ) | |
| LUIS R. SANCHEZ, | ) | |
| Defendant | ) | |

**Defendant's Motion to Suppress Evidence Derived from Electronic Surveillance for Failure to Minimize the Intercepted Communications and Incorporated Memorandum of Law**

Now comes the Defendant, Luis R. Sanchez, by and through undersigned counsel, pursuant to 18 U.S.C. §§2518(5), 2510(a)(iii), and the Fourth Amendment to the United States Constitution, and respectfully moves that this Honorable Court suppress all of the defendant's communications derived from the electronic surveillance conducted pursuant to court orders entered on May 28, 2004, June 28, 2004 and August 17, 2004, on the ground that law enforcement officers conducting the interceptions made inadequate effort to minimize conversations unrelated to the offenses specified in the orders authorizing electronic surveillance and, in fact, engaged in wholesale interception of conversations unrelated to those offenses. The interceptions were not, therefore, "made in conformity with the order of authorization or approval." §2510(a)(iii).

As further reason therefore, the defendant relies upon the memorandum of law incorporated herein.

### Request for Oral Argument and Evidentiary Hearing

Mr. Sanchez respectfully requests oral argument and an evidentiary hearing on the within motion.

1

Memorandum of Law

I.  Introduction.

On March 12, 2004, Judge Gertner granted the government's application for authorization to intercept communications of five named individuals (not including the defendant, Luis R. Sanchez) relating to various controlled substance and money laundering offenses, occurring over a telephone subscribed to Reynaldo Rivera having a number of 978-423-8173 ("Target Telephone"). To the defendant's knowledge, he was not intercepted over Target Telephone.

On May 28, 2004, Judge Saris authorized the interception of communications of three of the five individuals named in the March 12, 2004 order (Julio Santiago, Reynaldo Rivera and Jose Torrado), over a second telephone believed to be used by the target subjects with a number of 347-200-5004 ("Target Telephone #1"). As explained in further detail *infra*, the Defendant, though not named in the application for the order or within Judge Saris' order, was intercepted over Target Telephone #1 pursuant to May 28, 2004 order.

On June 28, 2004, Judge Tauro authorized the interception of communications of the three individuals named in the March 12, 2004 and the May 28, 2004 orders (Santiago, Rivera and Torrado), as well as three additional individuals (Pedro Julio Lara a/k/a "Guillermo", Harry Poventud and Carlos Sanchez), but not the Defendant, over a third telephone believed to be used by the target subjects with a number of 347-248-7669 ("Target Telephone #2").

On August 17, 2004, Judge Wolf extended the authorization to intercept communications occurring over Target Telephone #1 (347-2000-5004) and Target Telephone #2 (347-248-7669), finding probable cause to believe that nine individuals were committing the identified offenses.

2

The defendant was not named within Judge Wolf's August 17, 2004 order or in the affidavit in support of this order.

There were additional orders issued relative to this case, though, to the Defendant's belief, he was not intercepted pursuant to any other order.[1] According to the Linesheets provided to the Defendant by the government, the defendant's conversations were intercepted over Target Telephone #1 (347-200-5004) on eleven different dates: June 7, 2004, June 20, 2004, June 29, 2004, August 18, 2004, August 19, 2004, August 20, 2004, August 21, 2004, August 26, 2004, August 27, 2004, September 6, 2004, and September 7, 2004. (Linesheets for Target Telephone #1 attached hereto as Exhibit 1). On several of these days, the government intercepted multiple conversations. Interception of communications over Target Telephone #1 was first authorized in Judge Saris' order of May 28, 2004, and it was extended for an additional thirty days in Judge Wolf's order of August 17, 2004.

According to the Linesheets provided by the government, the defendant's conversations were intercepted over Target Telephone #2 on 4 different dates: (1) June 30, 2004, (2) July 5, 2004, (3) July 6, 2004, and (4) July 18, 2004. Interception of communications over Target Telephone #2 were first authorized in Judge Tauro's order of June 28, 2004, and it was extended

---

[1]. On September 9, 2004, Judge Wolf authorized interceptions of communications occurring over a pager device assigned number 978-788-0589 ("Target Pager"). The defendant was named in the application in support of the order and the order itself, for the first time in the investigation, but the defendant does not believe he was intercepted pursuant to this order. On September 29, 2004, Judge Young authorized interceptions over two additional telephones, numbers 917-815-3487 ("Target Telephone #3) and 978-408-9075 ("Target Telephone #4). The defendant does not believe he was intercepted pursuant to these orders. On October 13, 2004, Judge Young extended the authorization to intercept communications occurring over Target Pager. To the extent the defendant has been intercepted pursuant to these orders, or other orders not identified herein, the defendant respectfully reserves the right to supplement and/or amend the instant motion and memorandum.

3

for an additional thirty days in Judge Wolf's order of August 17, 2004.[2] (Linesheets for Target Telephone #2 attached hereto as Exhibit 2).

Defendant has moved to suppress all of his communications intercepted pursuant to Judge Saris' order of May 28, 2004 (Target Telephone #1), Judge Tauro's Order of June 28, 2004 (Target Telephone #2), and Judge Wolf's order of August 17, 2004 (Target Telephones #1 and 2), as well as all evidence derived therefrom, on the grounds that law enforcement officers conducting the interceptions made inadequate effort to minimize conversations unrelated to the offenses specified in the orders authorizing electronic surveillance and, in fact, engaged in wholesale interception of conversations unrelated to those offenses, in violation of 18 U.S.C. §2510(a)(iii).

II.  Factual recitations within the Applications, Affidavits and Orders of May 28, 2004, June 28, 2004 and August 17, 2004

All applications at issue were supported by an affidavit of DEA Special Agent Terry G. Hanson ("Hanson," herein). The applications and affidavits submitted in support of the orders at issue herein do not assert that probable cause existed to believe that the defendant had committed any offenses, nor did they seek permission to intercept conversations of the defendant. The application and affidavit dated May 28, 2004 asserted that probable cause existed to believe that offenses have been committed, are being committed and would continue to be committed by the subjects of the investigation, "including, among others," Santiago, Rivera and Torrado. The body of the affidavit also discussed co-defendants Enrique Agosto, Jose Rodriguez, and Zuleima

---

[2] The government has not particularized all of the wiretaps during which the Defendant was intercepted. Defendant's review of the line sheets has identified interceptions of Sanchez on Target Telephone #1 and Target Telephone #2. The line sheets do contain more than a brief summary of the conversation. Moreover, the intercepted conversations are in Spanish and the defendant is still in the process of having those conversations transcribed. As such, Defendant Sanchez reserves the right to supplement his motion and memorandum if he receives information after their filing indicating that he was intercepted over telephones other than telephones 1 and 2 or during the periods of interception identified *supra*, or he learns that the conversations as described in the Linesheets are materially and/or substantially misleading regarding the content of those identified conversations.

4

Reyes. There is no mention of the defendant, he is apparently not viewed during any physical surveillance, his numbers apparently don't surface on the pen registers, and no confidential informant discusses or even names the defendant.

In the June 28, 2004 affidavit, Hanson again omits any reference to the defendant in his recitation that probable cause exists to believe that certain subject targets are committing the offenses: (1) Santiago, (2) Rivera, (3) Torrado, (4) Pedro Julio Lara, a/k/a "Guillermo", (5) Harry Poventud, (6) Carlos Sanchez, and (7) Agosto. (Hanson June 28, 2004 Affidavit at ¶3). In fact, Hanson omits the defendant's name as a subject target despite his assertion in the June 28, 2004 affidavit that interceptions pursuant to the May 28, 2004 order revealed a conversation between Santiago and "Pito", who the government now alleges is the defendant, that was criminal in nature.[3] Hanson avers that references to "play ball" were code for a purchase of heroin by the defendant from Santiago. (Hanson June 28, 2004 affidavit at ¶50).

In the last pertinent affidavit, dated August 17, 2004, Hanson again omits the defendant from the subject target list. In the August 17, 2004 affidavit, submitted in support of extending the interceptions over Target Telephone #1 and Target Telephone #2, Hanson states that probable cause exists to believe that Santiago, Rivera, Torrado, Lara a/k/a "Guillermo", Agosto, Poventud, Carlos Sanchez, Pedro Alberto Miranda, and Edwin Torrez, and "others as yet unknown" were committing the subject offenses. Indeed, notwithstanding Hanson's assertion that "Pito" had engaged in criminal discussions with Santiago, as described in the June 28, 2004 affidavit, Hanson does not name "Pito" in the August 17, 2004 affidavit, nor does he repeat the alleged criminal conversation in his factual recitation in the affidavit.

---

[3]. The defendant disputes that the conversation at issue, identified in paragraphs 50 and 55 of the affidavit, can reasonably be construed as criminal in nature.

5

III.     <u>Law Enforcement Officers failed to lawfully and properly minimize intercepted conversations.</u>

18 U.S.C. §2518(5) mandates that every order authorizing electronic surveillance "contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." The May 28, 2004 order authorizing electronic surveillance provided:

All wire communications will be minimized in accordance with Chapter 199 of Title 18 of the United States Code. Interception will be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the Target Subjects or any of the criminal associates, once identified, is participating in a conversation, unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If any conversations are minimized, the monitoring agents or personnel shall spot check to ensure that the conversation has not turned to criminal matters.

(May 28, 2004 Order at p.6). The Order also provided:

IT IS FURTHER ORDERED that this authorization to intercept wire communications shall be executed as soon as practicable after the signing of this Order and shall be conducted in accordance with the procedures set forth in the Application and the Affidavit of DEA Task Force Agent Terry G. Hanson in such as way as to minimize the interception of communications not otherwise subject to interception under Chapter 119 of Title 18 of the United States Code, and must terminate upon the attainment of the authorized objectives or, in any event, at the end of thirty (30) days.

(May 28, 2004 Order at p.8). Hanson's affidavit stated:

> Even if one of the Target Subjects or their criminal associates, once identified, is a participant in a conversation, monitoring will be suspended if the conversation is not criminal in nature or not otherwise related to the offenses under investigation. Based on information provided by other monitoring and supervising agents, I believe that many narcotics-related conversations may occur in the course of otherwise innocent conversations. Once interception has begun, monitoring agents will use information obtained from previous interceptions to help determine whether a particular call should be minimized as a non-pertinent call. Lengthy conversations that appear to be non-pertinent periodically will be monitored to determine if the conversation has become criminal in nature. All intercepted wire conversations will be recorded and all recordings will be securely preserved. Logs will be prepared regarding the date and time of calls, the parties involved, the subject matter of the calls, and if and when minimization occurred.

6

> Reports detailing the course of the interception will be filed with the Court on or about the tenth and twentieth days following the commencement of interception pursuant to the Court's order. Particular emphasis will be placed on reporting minimization efforts to the court.

(Affidavit at ¶83).

The same language was repeated in all subsequent affidavits and orders. *See June 28, 2004 Order and August 17, 2004 Order.* These directives were manifestly violated by the government during these interceptions, resulting in the interception of many communications by the defendant unrelated to the offenses for which interception was authorized and/or non-criminal in nature.

The minimization requirement "spotlights the interest in confining intrusions as narrowly as possible so as not to trench impermissibly upon the personal lives and privacy of wiretap targets and those who, often innocently, come into contact with such suspects." *United States v. Lopez*, 300 F.3d 46, 57 (1st Cir. 2002), *quoting United States v. Hoffman*, 832 F.2d 1299, 1307 (1st Cir. 1987). Compliance with the minimization requirements are essential to the prevention of the type of overbroad and general searches which were such anathema to the framers of the Constitution and which the Fourth Amendment was designed to make impossible.

> [T]he minimization duty under §2518(5) implements a constitutional prerequisite to the validity of all court-ordered electronic surveillance. Minimization embodies the constitutional obligation of avoiding to the greatest possible extent, seizure of conversations which have no relationship to the crimes being investigated or the purpose for which electronic surveillance has been authorized. Furthermore, the constitutional principle that all invasions of privacy must be limited in scope to the minimal intrusion necessary to fulfill their purpose is related to minimization, with particular reference to the problems of duration and termination. There is no direct equivalent to the minimization requirement in the law regulating conventional searches and seizures, although there are some shared principles of general applicability. There is the basic doctrine that officers executing a search warrant cannot search for one category of items under judicial authority which is limited to a different category of items. To be lawful under the warrant clause of the Fourth Amendment, conventional and electronic searches alike may only be directed towards the seizure of items particularly described in the warrant or order.

James G. Carr, *The Law of Electronic Surveillance*, §5:16 at 5-35-36 (2004)(hereinafter "Carr"). "The constitutional problems posed by potentially protracted and possibly continuous electronic searches can . . . be avoided only by minimization of the interception of nonpertinent conversations." *Id.* at 5-37.

"Minimization requires that the government adopt reasonable measures to reduce the interception of conversations unrelated to the criminal act under investigation to a practical minimum while permitting the government to pursue legitimate investigation." *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1991). "The question whether the government failed to comply with section 2518(5) requires an examination of the monitoring officers' conduct in light of the circumstances of the case." *United States v. Homick*, 964 F.2d 899, 903 (9th Cir. 1992). *See, e.g., Scott v. United States*, 436 U.S. 128, 139 (1978); *United States v. McGuire*, 307 F.3d 1192, 1199 (9th Cir. 2002); *United States v. Bennett*, 219 F.3d 1117, 1123 (9th Cir. 2000); *United States v. Turner*, 528 F.2d 143, 156 (9th Cir. 1975). The government has the burden to demonstrate that it complied with the minimization requirement. *Torres*, 908 F.2d at 1423. Simply put, it cannot do so here.

Much of the evidence regarding the government's failure to honor the minimization requirement, and the minimization directive contained within each authorization order, can be found in its own statements. Hanson represented that "[e]ven if one of the Target Subjects or their criminal associates, once identified, is a participant in a conversation, monitoring will be suspended if the conversation is not criminal in nature or not otherwise related to the offenses under investigation." (*See, e.g.*, May 28, 2004 Affidavit at ¶83). Yet, according to the government's own linesheets, the government intercepted many conversations that were totally

8

non-criminal in nature, including innocuous voicemail messages and innocuous conversations regarding playing softball. (*See* Exhibits 1 and 2).

At least with respect to the Defendant, there was a wholesale failure to minimize conversations unrelated to the offenses for which interception authorization had been granted and, concomitantly, the interception of myriad conversations that were clearly entirely personal or otherwise irrelevant to the offenses under investigation. That failure to minimize arose not from any complexities of the offenses under investigation or unfamiliarity with the terminology used by the interceptees but from the government's patent failure to "adopt reasonable measures to reduce the interception of conversations unrelated to the criminal act under investigation to a practical minimum," *Torres*, 908 F.2d at 1423. The minimization instructions used during these interceptions essentially left it to the unfettered discretion of the monitors to determine for themselves what listening patterns they would adopt.

The minimization instructions for these interceptions were wholly inadequate to ensure compliance with the minimization mandate of Title III. The monitors were given almost total discretion to determine for themselves, on an individual basis, what efforts at minimization they would make and they provided no guidance whatsoever regarding the permissible duration of any "initial" monitoring. In fact, with regard to lengthy conversations, there is nothing in the Orders other than a command to follow the procedure outlined in Hanson's affidavit, which did not define the appropriate intervals between, or duration of, permissible spot-checking, but instead merely advised that lengthy conversations would be "periodically" monitored. (Hanson Affidavit at ¶83). Thus, monitors were left to decide for themselves how long they would listen to a conversation before deciding that it was nonpertinent and should be minimized; one monitor might decide to listen for one minute and another for five or ten. Then, after minimizing, the

9

monitors were free to determine for themselves the frequency with which they would spot check and how long that spot check would be. One monitor might decide to spot check after a minute, but he might listen for another five or ten minutes before minimizing again. Another monitor might decide to spot check every twenty seconds and also listen for long intervals. The failure to provide monitors with specific parameters regarding what was and was not an acceptable length of time to listen to a call before minimizing or regarding how frequently spot checking was permitted and for how long, was objectively unreasonable and logically led to widespread lack of minimization.[4]

The violation of the minimization requirement which occurred in this case demands total suppression of all communications intercepted in the course of the wiretaps involving the Defendant. The minimization requirement is a central and vitally important requirement of all statutory wiretapping schemes and suppression of all intercepted communications is the required remedy. Congress intended to require suppression where there is failure to satisfy any of the statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device. *United States v. Giordano*, 416 U.S. 505, 527 (1974). *See* 18 U.S.C. §2515. The minimization requirement is such a provision. *See, e.g., United States v. Scully*, 546 F.2d 255, 262 (9th Cir. 1976)("The minimization provision reflects and substantially implements Congress' intent to limit interceptions[; t]here must be suppression if the government

---

[4]. The defendant respectfully reserves the right to supplement and/or amend the instant motion and memorandum with an analysis of the ratios of overall calls as contrasted with the number of minimized conversations, and thus determine whether the minimization effort was managed reasonably in light of the totality of the circumstances. *See Scott v. United States*, 436 U.S. 128, 137-139 (1978); *United States v. Charles*, 213 F.3d 10, 22 (1st Cir.2000); *United States v. Hoffman*, 832 F.2d 1299, 1307 (1st Cir.1999). The defendant believes that no log has been prepared regarding these statistics and he will therefore need to examine the linesheets from all intercepted conversations to determine the appropriate ratios.

has failed to comply substantially with the minimization requirement"), *vacated on other grounds sub nom. United States v. Cabral*, 430 U.S. 902 (1977).

IV.   Conclusion

For all the foregoing reasons, all conversations of the Defendant intercepted during the course of these interceptions should be suppressed.

Respectfully submitted,<br>
The Defendant,<br>
By his attorney,<br>
<br>
/s/ Robert M. Goldstein<br>
Robert M. Goldstein<br>
Mass. Bar No. 630584<br>
20 Park Plaza, Suite 903<br>
Boston MA 02116<br>
(617) 742-9015

Dated: June 17, 2005

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby certify that on this 17th day of June, 2005, I have served a copy of the instant pleading, via hand delivery, upon Assistant U.S. Attorney Denise Jefferson Casper.

Robert M. Goldstein

11