**United States District Court**
**District of Massachusetts**

```
                                      )
UNITED STATES OF AMERICA,             )
                                      )
              v.                      )
                                      )    Criminal Action No.
JULIO CARRION SANTIAGO, et al.,       )    04-10336-NMG
                                      )
              Defendants.             )
                                      )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The Superceding Indictment in this case charges twelve
defendants in connection with their alleged roles in a large
heroin distribution conspiracy. According to the government,
defendant Juan Nunez ("Nunez") was a New York-based supplier of
heroin for defendant Julio Carrian Santiago ("Santiago"). The
other defendants allegedly assisted Santiago, distributed heroin
acquired from Santiago or assisted the distributors.

An affidavit of Drug Enforcement Administration ("DEA")
Special Agent Calice Couchman was submitted in support of a
criminal complaint filed against 11 of the defendants ("the
Couchman Affidavit"). A second affidavit was supported in
support of a criminal complaint filed against Nunez. Various
search warrants were issued based upon the Couchman Affidavit.

Five defendants have filed separate motions to suppress

-1-

evidence recovered pursuant to searches in this case.  The
motions of defendants Santiago, Reyes and Sanchez are addressed
below.  An evidentiary hearing will be held with respect to the
motions of defendants Torres and Miranda.

## I.  **Santiago**

Santiago, one of the major players in this alleged
conspiracy, moves to suppress all items seized from his residence
at 264 Mechanic Street in Leominster, Massachusetts, on the
ground that the Couchman Affidavit fails to establish probable
cause that drug activity was taking place at the residence and
that, therefore, the search violated his Fourth Amendment rights.

In order for a search warrant properly to be issued,

> the warrant application must demonstrate probable cause to
> believe that a particular person has committed a crime -
> "the commission element" - and that enumerated evidence
> relevant to the probable criminality likely is located at
> the place to be searched - "the 'nexus' element"....
> Under the probable cause standard, the totality of the
> circumstances disclosed in the supporting affidavits must
> demonstrate a fair probability that contraband or evidence
> of a crime will be found in a particular place.

United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996)
(quotations omitted).

The warrant should be read in a "commonsense and realistic
fashion" and probable cause may be demonstrated through
reasonable inferences rather than from direct evidence.  United
States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999) (quoting United
States v. Ventresca, 380 U.S. 102, 108 (1965)).  Although there

-2-

is not per se probable cause to search the residence of an individual suspected of a drug-related crime, courts have recognized that evidence of involvement in the drug trade is likely to be found where the dealers live. See, e.g., id.

Reviewing courts are to pay "great deference" to a magistrate judge's determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983). The Court will affirm the magistrate judge's determination as long as there was a "substantial basis" for concluding that a search warrant would uncover evidence of wrongdoing. Id.

Santiago contends that the Couchman Affidavit did not supply any facts to support the conclusion that drug trafficking activity was taking place at his residence or that evidence of probable criminality was likely to be found there. For example, he contends that the affidavit lacks assertions that he was seen leaving his residence carrying packages or entering the premises carrying mysterious packages from drug laden vehicles.

Santiago's characterization of the Couchman Affidavit is misguided. The affidavit recounts Santiago talking with other individuals on three cellular telephones in terms that, in Couchman's experienced opinion, were code for heroin transactions. Santiago had been observed driving his minivan to meet with customers for delivery of drugs ordered via previously intercepted calls and had been observed driving to Brooklyn, New

-3-

York, where, in Couchman's opinion, intercepted calls and surveillance demonstrated probable cause to believe that Santiago received quantities of heroin for distribution. The affidavit unquestionably demonstrates probable cause that Santiago was involved with heroin distribution.

The affidavit also contains evidence sufficient to form a nexus between the alleged probable criminal activity and 264 Mechanic Street. Throughout the investigation, Santiago lived at 264 Mechanic Street. He regularly parked his minivan at the residence and was observed traveling to and from the residence allegedly to make heroin deliveries and/or collect money for heroin sales. Couchman concluded, based upon her training and 19 years of experience, there was probable cause to believe that drug proceeds, narcotics and other evidence would be found at the residence.

As a whole, the affidavit contains ample support for inferences that establish probable cause that Santiago had committed drug crimes and that evidence relevant to those crimes was likely to be found at his residence. Santiago's motion to suppress will, therefore, be denied.

## II. **Reyes**

Defendant Zulemia Reyes ("Reyes") moves to suppress all evidence obtained pursuant to a wiretap on telephone number (978) 423-8173, a mobile telephone subscribed to by co-defendant

-4-

Reynaldo Rivera ("Rivera"), contending that the affidavit in
support of the wiretap was insufficient to support the court's
issuance of the wiretap.

In order to ensure that electronic surveillance is used only
when appropriate, the government is

> required to make a reasonable, good faith effort to run the
> gamut of normal investigative procedures before resorting to
> means so intrusive as electronic surveillance of telephone
> calls.

United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir. 1989)

(citation omitted). To that end, every application for an order

authorizing the use of electronic surveillance must contain

> a full and complete statement as to whether or not other
> investigative procedures have been tried and failed or why
> they reasonably appear to be unlikely to succeed if tried or
> to be too dangerous.

18 U.S.C. § 2518(1)(c).

As the First Circuit Court of Appeals has stated,

> the government does not need to exhaust all other
> investigative procedures before resorting to wiretapping.
> Nor must ordinary techniques be shown to have been wholly
> unsuccessful. Rather, the district court must satisfy
> itself that the government has used normal techniques but it
> has encountered difficulties in penetrating a criminal
> enterprise or in gathering evidence – to the point where
> (given the statutory preference for less intrusive
> techniques) wiretapping becomes reasonable.

United States v. Abou-Saada, 785 F.2d 1, 11 (1st Cir. 1986)

(citations omitted).

The order authorizing the wiretap on the relevant telephone
was issued by another judge of this district. When a district

-5-

judge reviews the decision of another district judge to approve a wiretap, the review is deferential:

> the reviewing court examines the face of the affidavit and "decide[s] if the facts set forth in the application were minimally adequate to support the determination that was made."

United States v. Villerman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003) (quoting United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989)).

Reyes alleges that electronic surveillance was not necessary in this case and that, to the contrary, the affidavit submitted by DEA Task Force Agent Terry G. Hanson in support of the wiretap ("the Hanson Affidavit") established that normal investigative procedures were sufficient in this case. She further contends that the Hanson Affidavit failed to make the full and complete statement required by 18 U.S.C. § 2518(1)(c).

As detailed in the Hanson Affidavit, the government utilized various investigative methods, such as physical surveillance by agents, interviews with confidential informants, undercover purchases and trash searches, before the wiretap application was submitted. Those methods were somewhat successful: confidential informants had provided information that Rivera was an alleged heroin distributor and undercover agents had allegedly purchased heroin from Rivera, whom they believed to be Rivera's primary drug associate, on three separate occasions. Hanson had concluded that Rivera was one of the largest heroin dealers in

-6-

the Lowell area.

If the only aim of the investigation were to determine whether Rivera or Reyes were, in fact, heroin dealers, a wiretap may not have been reasonably necessary to the investigation. However, as stated in the Hanson affidavit, the major goals of the investigation included, among other things, 1) infiltrating the upper echelon of Rivera's heroin distribution network, 2) determining the full extent of his drug trafficking and money laundering activities and 3) identifying his suppliers, transporters, managers, financiers, distributors and major customers. Those goals had not been accomplished prior to the authorization for the subject wiretap and the use of the wiretap was a reasonable next step in the investigation.

The Hanson Affidavit detailed the traditional investigative techniques that had been tried and failed, reasonably appeared unlikely to succeed or were too dangerous to employ. It thus contained the "full and complete statement" required by 18 U.S.C. § 2518(1)(c).

The Hanson Affidavit was, at the very least, "minimally adequate" to support the conclusion that electronic surveillance was an appropriate next step in the investigation. Furthermore, its summary of the limitations of traditional investigative techniques met the requirements of 18 U.S.C. § 2518(c). Reyes' motion to suppress the evidence derived as a result of that

-7-

wiretap will, therefore, be denied.

## III. Sanchez

Defendant Luis R. Sanchez ("Sanchez") moves to suppress all
of his communications derived from electronic surveillance
conducted pursuant to court orders dated May 28, June 28 and
August 17, 2004 ("the Orders"), on the ground that the law
enforcement officers conducting the intercepts failed to minimize
them.

Every order authorizing the interception of electronic
communications must contain a provision requiring the
interception to "be conducted in such a way as to minimize the
interception of communications not otherwise subject to
interception". 18 U.S.C. § 2518(5). The statute "does not
forbid interception of non-pertinent conversations but requires a
reasonable effort to minimize such interceptions." United States
v. Hurley, 63 F.3d 1, 17 (1st Cir. 1995).

The question of whether the government's efforts to minimize
unauthorized interceptions is reasonable is analyzed in light of
the "totality of the circumstances" and "in the context of the
entire wiretap, as opposed to a chat-by-chat analysis." United
States v. Hoffman, 832 F.2d 1288, 1308 (1st Cir. 1997). The
government, in attempting to minimize unauthorized interceptions,
is "held to a standard of honest effort; perfection is usually
not attainable, and is certainly not legally required." Id.

-8-

Sanchez also contends that the government violated the minimization directives contained in the Orders. He does not, however, identify any conversation that was monitored unreasonably.

At the time the Orders were issued, the government was investigating a suspected large, multi-member drug conspiracy. The telephones that were the subject of the Orders were cellular telephones being used by co-defendant Santiago, an alleged heroin supplier and major player in the conspiracy, and Santiago was a participant in all of the calls Sanchez now seeks to suppress. When an investigation involves a suspected large and sophisticated drug conspiracy, agents are afforded additional latitude in intercepting communications. Id. Furthermore, Santiago and Sanchez often spoke in coded language which agents understood to represent drug transactions, justifying additional leeway for the intercepting agents. "When the opposition speaks in tongues, there is greater need to listen longer and more closely to conversations which may seem innocuous at first." Id.

Moreover, the calls Sanchez seeks to suppress were all of short duration. All but one of the calls lasted for one minute and 36 seconds or less; the exception lasted for three minutes and 12 seconds and involved Sanchez and Santiago apparently discussing a drug transaction in coded language. As courts have recognized, it is difficult for agents to determine whether brief

-10-

calls are innocuous, and therefore limit interception, before their termination. In this case, the agents' listening to a call for two minutes, even if it turned out to be innocuous, was reasonable. See, e.g., United States v. Gambale, 610 F. Supp. 1515, 1528 (D. Mass. 1985) (holding that spot checking involving listening for two minutes then not listening for one minute was reasonable); United States v. Cleveland, 94 F. Supp. 1073, 1095 n. 10 (E.D.La. 1997) (collecting cases which hold that "calls lasting less than three minutes cannot reasonably be expected to be minimized since it takes that long to ascertain the relevancy of a particular conversation").

Sanchez notes that he was not named in any of the Orders as a target of the investigation. This does not render conversations in which he participated outside of the wiretap authorization or unreasonably intercepted. The Orders applied to named target subjects as well as "others as yet unknown". It is not required that a wiretap interception name all persons likely to be overheard in conversations, United States v. Donovan, 429 U.S. 413, 427 n.15 (1976), and the failure to name an individual as a potential interceptee is not cause for suppression of such calls, United States v. Santarpio, 560 F.2d 448, 454 n.5 (1st Cir. 1997).

Sanchez has failed to demonstrate that the government was unreasonable in minimizing interception. The calls were all of

-11-

short duration and involved an alleged heroin dealer suspected of participating in a complex conspiracy. Many of the intercepted calls involved drug transactions and were pertinent to the investigation. The calls will not, therefore, be suppressed.

Sanchez has requested oral argument and an evidentiary hearing on his motion. The government opposes that request. An evidentiary hearing is appropriate only when the defendant produces evidence that a substantial number of non-pertinent conversations were intercepted unreasonably. Gambale, 610 F. Supp. at 1529. Where defendant does not produce such evidence, a hearing is not required. United States v. Migely, 596 F.2d 511, 513 (1st Cir. 1979), citing Cohen v. United States, 378 F.2d 751, 761 (9th Cir. 1967) (holding that evidentiary hearing is warranted only when defendant alleges facts "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented"). Sanchez has failed to offer factual allegations that, if proven true, would entitle him to relief. The request for an evidentiary motion will, therefore, be denied.

## ORDER

Based upon the foregoing memorandum:

1) Santiago's Motion to Suppress Items (Docket No. 128) is **DENIED;**

-12-

2) Reyes' Motion to Suppress Evidence Produced by Wiretap
   134
   Orders (Docket No. ~~138~~) is **DENIED**; and

3) Sanchez' Motion to Suppress Evidence Derived from

   Electronic Surveillance for Failure to Minimize the

   Intercepted Communications (Docket No. 151) is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: September 20, 2005

-13-