UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | |
| ) | CRIMINAL NO. 04-10336-NMG |
| LUIS SANCHEZ, ) | |
| Defendant ) | |
| ) | |
| ) | |

**SENTENCING MEMORANDUM
ON BEHALF OF DEFENDANT LUIS SANCHEZ**

For the reasons articulated in the instant memorandum, Luis Sanchez respectfully requests that this Court impose a sentence of no more than 30 months, which is the sentence most consistent with the mandate of 18 U.S.C. §3553(a) that the Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in the second paragraph of that statute, to wit: the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. §3553(a). Even should the Court ultimately disagree with the parties' proposed guideline calculations, as articulated within the plea agreement executed in this matter, and instead believes that some additional enhancement(s) is warranted, the defendant respectfully contends that a sentence of 30 months is still the most appropriate sentence, as numerous grounds exist that warrant a deviation from the now-advisory Guidelines.  *See* 18 U.S.C. §3553(a).

1

I.  **The Applicable Sentencing Framework—The First Circuit's Post-*Booker* Sentencing Framework.**

After *United States v. Booker*, 543 U.S. 220 (2005), the guidelines "are merely advisory, which means that a district court has considerable leeway to impose a sentence that falls outside of the range suggested by the guidelines." *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005). *See United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006)(*en banc*)("*Booker*'s remedial solution makes it possible for courts to impose nonguidelines sentences that override the guidelines, subject only to the ultimate requirement of reasonableness"); *United States v. Pho*, 433 F.3d 53, 61 (1st Cir. 2006)("district courts now possess greater flexibility in reaching individual sentencing decisions"). To avoid replicating the mandatory guidelines scheme invalidated in *Booker*, the guidelines are not to be treated as presumptively controlling, but they do "continue to be an important consideration in sentencing that should be addressed in the first instance by the sentencing judge." *Jimenez-Beltre*, 440 F.3d at 518. *See, e.g., United States v. Brown*, 450 F.3d 76, 82 (1st Cir. 2006); *United States v. Navedo-Concepcion*, 450 F.3d 54, 57 (1st Cir. 2006).

Thus, the first task for the sentencing judge in the post-*Booker* universe is to calculate the GSR, "including the resolution of any factual or legal disputes necessary to that calculation," *Jimenez-Beltre*, 440 F.3d at 518. Second, the judge must determine whether any departures are warranted under the guidelines. *See, e.g., Jimenez-Beltre*, 440 F.3d at 518. The GSR, "taking applicable departures into account, is the *starting* point for the analysis . . . ." *United States v. Saez*, 444 F.3d 15, 17 (1st Cir. 2006)(emphasis added). *See, e.g., United States v. Anderson*, 452 F.3d 87, 94 (1st Cir. 2006). Once the court has established the GSR, including applicable departures, "it must then evaluate the

2

sentencing factors set out in . . . §3553(a), along with any other relevant considerations." *United States v. Dixon*, 449 F.3d 194, 204 (1st Cir. 2006). *See, e.g., United States v. Zapete-Garcia*, 447 F.3d 57, 59 (1st Cir. 2006); *United States v. Smith*, 445 F.3d 1, 4 (1st Cir. 2006); *Jimenez-Beltre*, 440 F.3d at 518-19. The final determination the Court must make is whether those factors warrant a sentence above or below the GSR, after departures have been taken into account. *See, e.g, United States v. Wallace*, 461 F.3d 15, 32 (1st Cir. 2006); *Smith*, 445 F.3d at 5; *Jimenez-Beltre*, 440 F.3d at 518-19.[1] Ultimately, the goal of the sentencing judge must be "to fashion 'a sentence sufficient, but not greater than necessary,' for the achievement of the legitimate objectives of sentencing." *Dixon*, 449 F.3d at 204, *quoting* §3553(a).

In keeping with the analytical framework prescribed by the First Circuit, this memorandum will first address the advisory guidelines calculations, arguing that there should be a base offense level of 22 pursuant to U.S.S.G. §2D1.1, based on a finding of 60 to 80 grams. Second, this memorandum will address the reasons why factors enumerated within 18 U.S.C. §3553(a) warrant a sentence of no more than 30 months.

---

[1] That a factor is discouraged or even forbidden under the guidelines does not exclude it from consideration when the court is weighing §3553(a) factors apart from the guidelines. *Smith*, 445 F.3d at 5. Thus, after *Booker*, the Court may also consider formerly discouraged or even prohibited factors such as Sanchez's education and vocational skills (§5H1.2), his employment record (§5H1.5), and his family ties and responsibilities (§5H1.6). *See* 18 U.S.C. §3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence"). Moreover, a defendant need not make an "extraordinary showing" for a sentence below the GSR to be warranted and reasonable. *United States v. Rivera*, 448 F.3d 82, 85 (1st Cir. 2006). *See also United States v. Vasquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006)(*Jimenez-Beltre* "makes it clear that a case need not be unusual for a sentencing court to consider the other factors in 18 U.S.C. §3553(a)").

**II.  Mr. Sanchez should be sentenced based upon a finding of between 60-80 grams of heroin.**

The parties have reached an agreement that Mr. Sanchez is responsible for between 60 and 80 grams of heroin, and that his Base Offense Level is therefore 22. With three (3) points for acceptance of responsibility and a Criminal History Category I, Mr. Sanchez's Total Offense Level is 19 and his Guideline Sentence Range is 30 to 37 months. Probation has reached a different conclusion than the parties, finding that Mr. Sanchez should be held responsible for 120 grams of heroin, should be accorded a Base Offense Level of 26, a Total Offense Level of 23, and should be subject to a minimum mandatory sentence of 60 months. The defendant has objected to Probation's determinations, which he incorporates herein, and he will not unduly repeat those objections herein. For the record, however, the defendant does wish to assert the legal position that judicial fact-finding by the Court would violate the jury trial guarantee of the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment, particularly in the context of the minimum mandatory sentencing scheme set forth in 18 U.S.C. §841(b).

First, in *Cunningham v. California*, 2007 WL 135687 at *4 (U.S. January 22, 2007), the Supreme Court recently held that California's determinative sentencing law violated the Sixth Amendment jury trial guarantee, ruling that the relevant law "assign[ed] to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence," and that the "facts so found are neither inherent in the jury's verdict nor embraced by the defendant's plea, and they need only be established by a preponderance of the evidence, not beyond a reasonable doubt." The

4

question before the Court was "whether the DSL, by placing sentence-elevating fact-finding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." *Id.*  The Court held, by a 6-3 vote, that it did, following the now-familiar trilogy of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004), and *Booker*.

Although the remedy opinion in *Booker* was not directly impacted by *Cunningham*, the Federal sentencing guidelines, like the California statute invalidated in *Cunningham*, "plac[e] sentence-elevating fact-finding within the judge's province" and do so by a preponderance of the evidence.[3]  Even under the First Circuit's *Jimenez-Beltre* formulation, which eschewed the approach of the circuits which regard a sentence within the guidelines as presumptively reasonable, the advisory guidelines continue to play, both as a matter of law and of practice, a central role in the sentencing determination, as the starting point for the assessment of whether other factors warrant a sentence above or below the GSR.  That being the case, for the record, Sanchez respectfully contends that increasing his guidelines offense level above the offense level of 22 based upon judicial fact-finding by a preponderance of the evidence violates the Sixth Amendment jury trial guarantee.

---

[3]

The three dissenting justices in *Cunningham* found the California sentencing law "indistinguishable in any constitutionally meaningful respect from the advisory Guidelines scheme that the Court approved in *Booker*" because "[b]oth sentencing schemes grant trial judges considerable discretion in sentencing; both subject the exercise of that discretion to review for "reasonableness"; and both – the California law explicitly and the federal scheme implicitly – require a sentencing judge to find some factor to justify a sentence above the minimum that could be imposed based solely on the jury's verdict. *Cunningham*, 2007 WL 135687 at *17 (Alito, J., dissenting).

5

At the very least, increasing Sanchez's guideline offense level based upon judicial fact-finding violates the Sixth Amendment jury trial guarantee in the context of a drug prosecution pursuant to 21 U.S.C. §841 and the discrete sentencing ranges established by the subsections contained therein. In *United States v. Gonzales*, 420 F.3d 111 (2d Cir.2005), the Second Circuit ruled that §841, unlike the statute at issue in *Harris v. United States*, 536 U.S. 545 (2002) (18 U.S.C. §924(c)(1)(A)), "does not use a fact (drug quantity) simply to identify increasing minimum sentences within a penalty scheme with a fixed maximum. Instead, when drug quantity raises a mandatory minimum sentence under §841, *it simultaneously raises a corresponding maximum*, thereby increasing a defendant's authorized sentencing range above what it would have been if he had been convicted of an identical unquantified drug crime." *Gonzales*, 420 F.3d at 126 (emphasis added). The Second Circuit ruled that the "*Apprendi* rule is, and after *Harris* remains, that '[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that *increase the prescribed range of penalties* to which a criminal defendant is exposed.'" *Gonzales*, 420 F.3d at 126-27, *quoting Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (internal quotation marks omitted) (emphasis added). The court reasoned that it "would turn this rule on its head to conclude that a fact, such as drug quantity, which unquestionably increases the 'range of penalties to which a criminal defendant is exposed,' is not an element of the crime that must be pleaded and proved beyond a reasonable doubt (or admitted by the defendant) because it increases the mandatory minimum sentence as well as the maximum." *Id*. The Court ruled that *Harris* "simply does not speak to that circumstance," but instead holds "that, where a fact 'alters only the minimum' sentence, without 'authorizing the judge to impose a higher penalty,'

6

the Constitution permits the fact to be treated as a sentencing factor." *Id., quoting Harris*, 536 U.S. at 554. "Because mandatory minimums operate in tandem with increased maximums in §841(b)(1)(A) and (b)(1)(B) to create sentencing ranges that 'raise the limit of the possible federal sentence,' drug quantity must be deemed an element for all purposes relevant to the application of these ranges." *Gonzales*, 420 F.3d at 129; *see United States v. Vaughn*, 430 F.3d 518, 528 (2d Cir.2005) ("We recognized in *United States v. Gonzalez* that mandatory minimum sentences are triggered only by a drug quantity proven to a jury beyond a reasonable doubt and that defendants convicted on an unquantified drug charge must be sentenced pursuant to §841(b)(1)(C), which generally provides no mandatory minimum sentence."); *but see United States v. Gonzalez-Velez*, 466 F.3d 27, 40-41 (1st Cir.2006).

Wherefore, given all of the foregoing, Mr. Sanchez respectfully contends that his base offense level should not be predicated on a finding of 120 grams, as Probation determined. Instead, Sanchez's base offense level should be level 22, based upon a finding of 60-80 grams, the amount agreed upon in the plea agreement and admitted by Mr. Sanchez at the Rule 11 hearing. While the defendant understands Probation's methodology, the defendant respectfully contends that it would be fundamentally unfair, a denial of Due Process, and a violation of his Sixth Amendment rights to predicate his offense level based upon the facts relied upon by Probation to conclude that Mr. Sanchez's sentence should be based upon a finding of 120 grams of heroin.

**III.    THE §3553(a) FACTORS WARRANT THE IMPOSITION OF A SENTENCE OF NO MORE THAN 30 MONTHS.**

Before making the catastrophic decisions that led to the instant indictment, Mr. Sanchez's history and characteristics are all overwhelmingly positive. Luis' youth was

7

consumed playing baseball in his childhood hometown, Arroyo, Puerto Rico, and it was an enjoyable period of time until his parents separated and his father moved to Lowell, Massachusetts. (PSR at ¶159-160). At that time, the family's financial situation became difficult and Luis left school to work in the sugar cane fields as a means to contribute financially to the household. (PSR at ¶160). Luis' passion for baseball remained, though, and he played semi-professionally in Puerto Rico and, in 1991, moved to Troy, New York to live with an aunt in order to play high school baseball. (PSR at ¶161). Luis returned to the sugar cane fields within a few months time, however, to help support his family. (PSR at ¶161).

Perhaps due to the fruits of his early labors, Luis now enjoys a close-knit and loving family. His presence in the lives of his wife and children is indispensable to them, including his wife of 7 years, Glenda Sanchez (nee Rodriguez), his 13 year old son, Luis, and his 10 year old daughter, Kiara. The fact that Luis was raised in poverty and came from a broken home initially caused difficulty with his relationship with Glenda, who was raised in Connecticut in an intact familial unit, but they worked their way through "the difficult times" and "their relationship and marriage remain strong." (PSR at ¶¶162, 164). Ms. Sanchez describes Luis as "a good husband, a good father, and a good man," and further advised that "he has always worked to provide for his family, and … has always gone out of his way to help friends in need." (PSR at ¶164). The "defendant has continued playing in mens' baseball leagues and he has encouraged his children to become involved with sports." (PSR at ¶164).

The fact remains, however, that the Sanchez's have been hit with extremely difficult financial burdens. In 2003, the Sanchez's were forced to sell their Lowell home

8

because they were "constantly behind on their bills and were unable to keep up with their mortgage." (PSR at ¶166).[1] Several months after the sale of their home, they settled in their current apartment. While Glenda hopes to be able to remain in the apartment during her husband's incarceration, (PSR at ¶166), she advised Probation that she "is overwhelmed by her current financial responsibilities, and is concerned that she will not be able to continue to meet her financial obligations without her husband's financial contribution." (PSR at ¶165). Glenda remains focused on making her children feel safe, and has sent her oldest child to counseling to help him deal with his father's legal situation. (PSR at ¶165).

      The defendant has a solid, admirable employment history, especially considering that he does not speak or understand the English language. *See* PSR at ¶177. Indeed, Probation has observed that "[d]espite his lack of formal education, the defendant has developed numerous specialized skills," including carpentry, a licensed residential lead remover, installation of car stereo systems, sheet metal work, auto body repair, and automobile painting. (PSR at ¶176). For the past four years, Luis has been steadily employed as a carpenter and de-leader for Alpine Environmental, a company based in Chelmsford, Massachusetts, which advised Probation "that the defendant had good attendance and reliability, and that he was a lead carpenter with good skills." (PSR at ¶178, 180). Alpine has submitted a letter on Luis' behalf, observing that he worked 40 hours per week, he was a "very reliable employee, showing up on time and doing excellent work," he was a "very pleasant and friendly person," and they "intend to re-hire him when he is available." (Letter from Alpine Environmental, Inc., dated April 13,

---

[1] The PSR notes that the defendant's credit report reflects three charged off accounts with balances totaling $1,791 and nine (9) accounts in collection status with balances totaling $11,366, including six (6) debts related to past-due medical bills. (PSR at ¶189).

9

2007, attached hereto as Exhibit 1; *see* PSR ¶180). Before Alpine, the defendant worked as a computer technician at Teradyne, Inc. for several years, and in the shipping and receiving departments at several stores in the preceding years. (PSR at ¶¶182-184).

       The defendant's arrest and incarceration have had a profound impact upon him and his family. When first arrested, Luis "experienced symptoms of depression caused by his separation from his family." (PSR at ¶170). While he has coped with the depression associated with his separation by drawing and engaging in other busy activities, and while "his wife and other family members have been very supportive," (PSR at ¶170), the defendant understands that terrible decision-making on his part has created his current situation, and he has pledged to the Court that he has learned his lesson, he is committed to abiding by the law, and he "will not fail again." *See* Letter of Luis Sanchez attached hereto as Exhibit 2 (original letter in Spanish and translated copy attached as well). The defendant has made some terrible decisions that have led him to this point in his life, but he has never before even been convicted of a crime, much less incarcerated. (PSR at ¶¶147-150). The offense conduct at the heart of this prosecution was caused, at least in part, by the defendant's significant financial burdens, notwithstanding the fact that he worked full-time and engaged in many side-jobs, and, like many before and after him, the defendant unfortunately succumbed to the temptation of "easy" money. He has learned his lesson—at an extremely profound cost—and he has offered his personal assurance that he will never again be before any Court of law.

       Given all of the foregoing, the defendant respectfully contends that a sentence of no more than 30 months is a reasonable and just resolution of this matter. Respect for the law would be promoted by the individualization of the sentence imposed upon Mr.

Sanchez to take account of his commitment and devotion to his family, his exemplary record of employment, and his ability to succeed professionally despite his lack of formal education, his inability to read or write the English language, and his difficult childhood. *See* 18 U.S.C. §3553(a) (directing that the Court must consider the purposes of sentencing, which are: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes by the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." §3553(a)(2). A sentence of no more than 30 months would generate respect for the law by demonstrating that it can be both reasonable and just, not only to Sanchez, but to his family to which he means so very much.

Any consideration of what is just punishment for the offense of conviction should take into account what Sanchez has already suffered and will continue to suffer. The thought of being unable to be available to his wife, his son and his daughter, as well as his extended family, is inexpressibly painful to him. A sentence of no more than 30 months is consistent, and would avoid unwarranted disparity, with sentences imposed upon the co-defendants in this case. For example, Edwin Torrez received a sentence of 30 months, notwithstanding the fact that law enforcement agents searched a storage facility belonging to him "and found a digital scale, a diluent ('cut'), numerous plastic baggies bearing an 'It's Hot' imprint that identified his specific street brand of heroin, spoons, and plastic bags bearing an apple logo—the same type of bags found in the possession of two other mid-level heroin distributors within the organization."

11

Government's Sentencing Memorandum, United States v. Edwin Torrez, at 1.  When law enforcement agents arrested the defendant, they searched his home and his belongings and found no drug distribution paraphernalia.  While it is less than clear whether departures for disparity amongst co-defendants were appropriate in the First Circuit under the Guidelines, *see, e.g., United States v. Wogan*, 938 F.2d 1446 (1st Cir.1991) (pre-*Koon* decision); *United States v. Martin*, 221 F.3d 52, 57 (1st Cir.2000); *United States v. Flores*, 230 F.Supp.2d 138, 141, n.5 (D.Mass.2002) (departures for unjustified disparity permissible under guidelines), the Court possesses the authority, post-*Booker*, to impose a sentence below the guidelines under 18 U.S.C. §3553(a)(6) to remedy "unwarranted disparity amongst defendants with similar records who have been guilty of similar conduct." *United States v. Jaber*, 362 F.Supp.2d 365 (D.Mass.2005).

Finally, a sentence of more than 30 months is not necessary to protect the public from Luis—he has no prior criminal convictions and all the information before the Court provides strong assurance that he will not commit crimes in the future.  Indeed, should the Court have any concerns about the defendant's desire to move forward in his life and put the regrettable decisions of his past behind him, the defendant will agree to an extended period of supervised release in this case as an expression of his confidence (and an added protection) that he will abide by the laws of this country and the conditions of supervised release imposed by this Court.

### IV.     CONCLUSION

Luis Sanchez respectfully asks that this Court impose a sentence that appropriately balances all the §3553(a) factors and which is not greater than necessary to

accomplish the purposes of §3553(a)(2). Respectfully, the defendant requests a sentence of no more than 30 months.

          Respectfully submitted,
          Luis Sanchez,
          By his attorney,

          **/s/ Robert M. Goldstein**
          Robert M. Goldstein
          Mass Bar No. 630584
          20 Park Plaza, Suite 903
          Boston, MA  02116
          (617) 742-9015

Dated: April 17, 2007

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby state that a true copy of the foregoing document has been served via the electronic filing upon all registered parties, including Assistant U.S. William Bloomer, on this date, April 17, 2007.

          **/s/ Robert M. Goldstein**
          Robert M. Goldstein

Dated: April 17, 2007