UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 04-10336-NMG |
| LUIS SANCHEZ (7) | ) |
| a/k/a "Pito" | ) |
| Defendant | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Luis Sanchez, a/k/a "PITO" ("Sanchez" or "Pito").

**INTRODUCTION**

*Defendant Sanchez was a midlevel dealer in a massive heroin distribution organization. He obtained a total of approximately 80 grams of heroin from Julio Santiago on two occasions in July and August of 2004.*

To determine a defendant's final sentence, this Court must follow the three-step sentencing approach espoused by the First Circuit. United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). First, this Court must calculate the advisory guideline range. E.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Second, the Court must determine whether any traditional departures apply to the case at hand. E.g., United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006). Finally, the Court needs to determine whether any factors put forth in 18 U.S.C. § 3553(a) offer a persuasive reason to impose a sentence outside of the proposed guideline range. E.g., Robinson, 433 F.3d at 35.

## ANALYSIS

Under the written plea agreement, the government and Sanchez agree that Sanchez is responsible for between 60 and 80 grams of heroin, and that his Base Level Offense is 22. The parties arrive at that calculation by attributing the following amounts to Sanchez:

| | | |
|---|---|---|
| 06/07/04 | 30 grams (coded as "3 innings" or 30 pesos") | (PSR ¶ 52) |
| 08/26/04 | <u>50 grams </u>(coded as "50 pesos") | (PSR ¶ 66) |
| **TOTAL** | **80 grams** | |

According to the PSR, Sanchez is a Criminal History Category I and is therefore safety-valve eligible under §§ 5C1.2 and 2D1.1(b)(7), provided that he satisfies criterion 5.[1] (PSR ¶¶ 183-184). With a three-level adjustment for acceptance of responsibility, Sanchez's Total Offense Level is 19 and his GSR is 30 to 37 months. See Plea Agreement, dated 9/26/06. For the reasons provided below, the government recommends 30 months' incarceration to be followed by three years' supervised release. Such a recommendation is entirely reasonable in the circumstances of this case. See United States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc).

### A   Importance of the Guideline Range.

Even though the guidelines are advisory, the First Circuit has ruled that the guidelines remain a central component of any sentencing post-Booker. Jiménez-Beltre, 440 F.3d at 518; see also United States v. Kandirakis, No. 04-10372-WGY, 2006 WL 2147610, at *10 (1st Cir. August 1, 2006) (stating "the Guidelines - and their judge-made factual findings - are still the driving force behind federal sentencing"). The First Circuit explained that the "guidelines

---

[1] As of the date of this memorandum, Sanchez has not met this requirement of safety-valve eligibility and it is not anticipated that he will do so.

remained 'an important consideration' because they represented the only 'integration of the multiple factors' identified in the statute, often reflected past practice, and bore the imprimatur of the [Sentencing Commission] expert agency charged with developing them." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006), quoting Jiménez-Beltre, 440 F.3d at 518. The continuing importance of the guidelines is such that the more the judge's sentence differs from the advisory guideline range - either higher or lower - the more compelling the judge's justification must be for the atypical sentence. See Kandirakis, 2006 WL 2147610, at *11; United States v. Thurston, No. 05-2271, 2006 WL 2065404, at *4 (1st Cir. July 26, 2006); Smith, 445 F.3d at 4.

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Instead, reasonableness is judged in relation to the guidelines for three reasons adopted by the First Circuit in United States v. Jiménez-Beltre: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. See 440 F.3d at 518. Congress explicitly created the Sentencing Commission and guidelines to achieve these ends. Id.

The continued adherence to the now advisory guidelines remains evident in appellate courts across the country. While courts have repeatedly reversed as unreasonable sentences outside the applicable guideline ranges,[2] reversals of sentences imposed within the guideline

---

[2] See, e.g, Zapete-Garcia, 447 F.3d at 60 (holding that defendant's forty-eight month sentence – eight times the maximum of the advisory sentencing guideline range – was unreasonable as the district court failed to provide a reason for such a mammoth variance and neither defendant's prior deportations or arrest justified the increase); Smith, 445 F.3d at 5-6 (finding that defendant's forty-six month sentence – less than half the minimum advisory guideline range – for six counts of crack distribution and one count conspiring to sell narcotics was unreasonable as the defendant's minor role was taken into account in the

3

range have been extraordinarily rare. Kandirakis, 2006 WL 2147610, at *43 n.36; see also United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006) ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable"); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) ("[I]t will be rare for a reviewing court to say [a within-Guidelines sentence] is 'unreasonable.'"). In the post-Booker era, only one within-guidelines sentence has been found blatantly unreasonable. United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006) (sentence based on comparison to co-defendant's sentence found unreasonable). Furthermore, just two additional sentences have been reversed where the appellate court determined that the district court judge failed to provide an adequate explanation of the within-guidelines sentence. United States v. Carty, 453 F.3d 1214 (9th Cir. 2006); United States v. Vonner, 452 F.3d 560 (6th Cir. 2006). Moreover, the First Circuit and its sister circuits have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.

Against this backdrop, the parties have agreed in a written plea agreement that Sanchez is responsible for between 60 and 80 grams of heroin, and that his Base Offense Level is 22. The weight attributable to Luis Sanchez stems from the 50-gram delivery (termed "50 pesos"), which was corroborated through surveillance on August 26, 2004 (PSR ¶ 66), and the 30-gram order (termed "three innings" and "30 little pesos") on June 7, 2004 (PSR ¶ 52), which, although not surveilled, occurred on the same date that Rivera ordered two "CDs" from Santiago and agents subsequently seized two "fingers" of heroin from Rivera's Yukon after seeing Santiago place them inside the vehicle (PSR ¶¶ 51 - 54).

---

guideline calculation and the defendant had previously sold narcotics near schools, violated post-arrest release terms, and had no better than usual rehabilitation prospects).

The defendant pled guilty pursuant to Rule 11(c)(1)(B), see plea agreement ¶ 7, which expressly contemplates that the prosecutor and defense can agree on sentencing factors (including drug weight), though the court is not bound by such an agreement. See United States v. Yeje-Cabrera, 430 F.3d 1, 28 (1st Cir. 2005). Granted, the agreement to hold Sanchez accountable for between 60 and 80 grams of heroin is both conservative and generous at the same time. Sanchez easily could be held accountable for an additional 30 grams of heroin based upon activities occurring on July 6, 2004, and ten grams of heroin on August 26, 2004. On July 6th, Sanchez was intercepted informing Santiago that "thirty guys . . . were going over there." No surveillance followed to confirm an exchange and therefore the government agreed not to seek attribution of the thirty-gram amount to Sanchez. Similarly, Sanchez arguably could be held responsible for the ten grams of heroin that Torrado retrieved from Santiago's van on August 26th while Santiago was inside Sanchez's residence directing Torrado to the location of the coffee cup that contained the heroin in the vehicle. Nevertheless, the government does not seek to hold Sanchez accountable for that quantity of heroin.

"Defendants who plead guilty will receive a benefit in sentencing over those who do not, in both charge bargaining and fact bargaining situations." Id. at 24; see Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978) ("Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial.") (quoting Brady v. United States, 397 U.S. 742, 752 (1970)). While Probation raises valid points, the parties have taken into consideration the concerns raised in the PSR and maintain that the disposition proposed is reasonable and just (particularly given the lack of corroboration in terms of follow-up surveillance after specific drug-related conversations or in the absence of the

defendant at certain drug transactions).  See Garder & Rifkind, A Basic Guide to Plea Bargaining Under the Federal Sentencing Guidelines, 7 Crim. Just. 14, 16 (Summer 1992) ("Where facts are unclear or unascertainable, the parties may agree on some form of them without further justification or explanation to the court.").

Moreover, the government notes (1) the parties have specifically agreed that no downward departures from the guidelines apply to this case, and (2) as of the date of this Sentencing Memorandum, Sanchez has not satisfied criterion 5 under § 5C1.2 and therefore is not safety-valve eligible. Based on this record, it is not unreasonable for this Court to find the defendant responsible for 80 grams of heroin and to sentence him within the GSR of 30 to 37 months.

**B.    Application of the § 3553(a) Factors.**

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing and the defendant rightly does not seek a deviation below the GSR of 30 to 37 months.  Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines.  The other 3553(a) factors also point to this conclusion.         I

In short, the PSR reflects nothing unusual or extraordinary in Sanchez's background to justify taking him outside of the heartland of cases already addressed by the Sentencing Guidelines absent a motion by the government.  C.f., Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 2047 (1996) ("[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline").  Sanchez

chose to inject poison into the Greater Lowell community simply as a means to make money. To reflect the seriousness of the offense, to promote respect for the law and provide just punishment, to afford adequate deterrence and to protect the public, nothing should steer him outside the federal sentencing guideline range. See United States v. Thurston, No. 05-2271 (1st Cir. July 26, 2006) (discussing Congressional goal of promoting national uniformity in sentencing).

        RESPECTFULLY SUBMITTED
        MICHAEL J. SULLIVAN
        United States Attorney

By:    /s/ William F. Bloomer
        WILLIAM BLOOMER
        Assistant U.S. Attorney
        BBO#553104
        william.bloomer@usdoj.gov
        (617) 748-3644

**CERTIFICATE OF SERVICE**

    I, William F. Bloomer, hereby certify that this document filed through the ECF system on April 23, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        /s/William F. Bloomer
        WILLIAM F. BLOOMER

Date: 23 April 2007